# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

DELWOOD EQUIPMENT &
FABRICATION COMPANY,

                Plaintiff,

v.                                      CIVIL ACTION NO. 2:16-cv-01843

MATEC IN AMERICA, A DIVISION OF
GLOBAL EQUIPMENT MKTG, INC.,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Matec in America, a division of Global Equipment Mktg, Inc.'s ("MIA") Motion for Summary Judgment (ECF No. 31). For the following reasons, the Motion is **GRANTED**.

### *I.    BACKGROUND*

This action arises out of a complaint Plaintiff Delwood Equipment & Fabrication Company, Inc. ("Delwood") filed in the Circuit Court of Kanawha County, West Virginia on January 19, 2016. Defendant MIA filed a timely notice of removal on February 25, 2016.

Delwood's Complaint alleges a single cause of action for breach of contract. (ECF No. 1-2 at 6.) Delwood and MIA entered into a Dealer Sales Agreement ("Agreement") on February 15, 2012, under which Delwood served as MIA's non-exclusive dealer of certain coal-industry products in a territory that included the entire state of West Virginia. (ECF No. 31-3 at 9.) For sales of capital equipment, the Agreement provides:

> [I]t is MIA's desire to contract directly with the client, do invoicing, and collect the money. Upon collection of all money, MIA will disperse the Dealer's compensation back to the dealer. On those projects where progress payments apply, progress payments will be made to the dealer by agreement at the time of order.

(ECF No. 31-3 at 4.) Delwood asserts that two sales of equipment were made based on its efforts demonstrating the products to a company called Arcelor Mittal, for which it believes it is owed commission payments under the Agreement. (ECF No. 31-5 at 3-4.) Delwood claims that these sales were improperly done through a dealer called Power Screen of America. (*Id.* at 5.)

During the relevant period, MIA was also a party to a contract with Matec Italia,[1] under which MIA served as a dealer of certain Matec Italia products in certain states in the United States. (ECF No. 31-1 ¶ 3.) Under their two contractual agreements, if MIA sold a Matec Italia product and used Delwood as the dealer, MIA would directly invoice the client, and MIA would pay Delwood out of its share of the sale price.[2] (*Id.* ¶ 7.) Though MIA acknowledges that Matec Italia may have sold equipment to Arcelor Mittal, it denies that it was involved in or received payment for any such sale. (*Id.* ¶¶ 12-13.)

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

---

[1] Despite the common use of the name Matec, MIA avers that it is not a subsidiary of Matec Italia and that the companies are not affiliated in any way other than by contract. (ECF No. 31-1 ¶¶ 3-4.)

[2] Delwood asserts that MIA invoiced clients on behalf of Matec Italia, received payments from Matec Italia, and then paid Delwood its commission. (ECF No. 34 at 2.) In a Supplemental Affidavit filed with its Reply, MIA attempted to clarify its arrangement with Matec Italia by explaining that it never invoiced customers on behalf of Matec Italia, but rather that it purchased Matec Italia products, sold them directly to clients, and then paid its dealers (such as Delwood) out of the difference between the wholesale price and the end price. (ECF No. 35-1 ¶ 3.) The difference between these two arrangements is immaterial for the purposes of this motion.

317, 322 (1986). If there exist factual issues that properly can be resolved only by a trier of fact because they may reasonably be determined in favor of either party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of its case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Id.* The nonmoving party may not avoid summary judgment "by submitting an affidavit that conflicts with earlier deposition testimony." *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 300 (4th Cir. 2006) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)). When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the nonmoving party. *Mellen v. Brunting*, 327 F.3d 355, 363 (4th Cir. 2003). The nonmoving party may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

To demonstrate a breach of contract in West Virginia, a plaintiff must show proof of the formation of a contract, a breach of the terms of that contract, and resulting damages.[3] *Sneberger*

---

[3] MIA admits to the existence of a contract—the Agreement—for the purposes of this motion. In addition to arguing that Delwood has not produced evidence that MIA breached the terms of the Agreement, MIA argues that Delwood has not shown it was damaged. However, it appears that the argument that damages are lacking is based entirely on the argument that there was no breach; indeed, based on the language of the Agreement and the apparently mutual understanding of its terms, if MIA had breached the contract in the way Delwood alleges—by selling equipment to Arcelor Mittal in Delwood's territory based on its efforts—Delwood's right to commission payments would have been automatically triggered. Thus, if Delwood demonstrated this breach of terms, it would also demonstrate damages from the breach as a matter of course. Accordingly, damages or the lack thereof will not be addressed separately from the alleged breach.

*v. Morrison*, 776 S.E.2d 156, 171 (W. Va. 2015) (citing Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King*, 759 S.E.2d 795 (W. Va. 2014)). MIA argues that there are no material facts in the record demonstrating that MIA breached the terms of Agreement with Delwood by selling equipment to Arcelor Mittal and denying Delwood its commissions. Delwood argues that there are still issues of disputed fact with regard to the performance under the contract, so summary judgment should be denied. However, as MIA points out, Delwood's 30(b)(6) representative Davis Wooddell admitted when directly questioned on the issue that he had no knowledge that MIA was involved in a deal with Arcelor Mittal:

> Q: Okay. Do you know whether or not MIA ever invoiced Arcelor Mittal?
> A: I don't know.
> Q: Do you know whether or not MIA ever received any payment of any kind from Arcelor Mittal?
> A: No.
> Q: Do you know whether or not MIA has ever received any payment from Matec Italia as a result of a sale to Arcelor Mittal?
> A: Don't know.

(ECF No. 31-4 at 13:23-14:8.) Later in the deposition, Wooddell confirmed that his belief that MIA was involved in sales to Arcelor Mittal through Power Screen was "an assumption on my part" based on prior practice, and admitted he had no personal knowledge that any MIA employees or officers were involved in such sale. (*Id.* at 15:1-20.)

Though Delwood cannot point to any evidence that directly shows that MIA participated in sales to Arcelor Mittal, it argues that inferences drawn from the record create an issue of material fact as to whether MIA breached the terms of the agreement. Delwood argues that, taken together, the undisputed understanding of the Agreement that Delwood would be paid when MIA was paid for a sale, the affidavits of MIA's corporate officers, and Davis Wooddell's 30(b)(6) testimony give rise to an inference that MIA made sales to Arcelor Mittal on which it did not pay Delwood

4

commissions. (ECF No. 34 at 5-6.) Delwood asserts that a representative of Matec Italia, Matteo Goich, cut Delwood out of the sale to Arcelor Mittal but told Mr. Wooddell that Delwood would be paid commissions for their efforts in the sale. (*Id.* at 2-3.) Delwood also points out that MIA's Affidavits confirm that MIA's officers communicated with Matec Italia about sales of equipment to Arcelor Mittal, and that MIA's officers told Wooddell that Delwood would be paid for any such sales if MIA ever received payment. (*Id.* at 3.)

The evidence that Delwood relies on does not support the inference it asks the Court to make. As an initial matter, Matteo Goich's statement to Wooddell indicating that Delwood would be paid commissions does not implicate MIA, as MIA has averred that is not affiliated with Matec Italia except through their contractual relationship, and Delwood has not challenged this understanding.[4] Additionally, while the affidavits of MIA's CEO and President refer to communications with Matec Italia about sales of equipment to Arcelor Mittal, the communications were in the nature of seeking information about these sales. (ECF Nos. 31-1 ¶ 12, 31-2 ¶ 12.) In the same way, MIA's affidavits show that MIA only represented to Delwood that it would pay Delwood for any such sales if MIA was ever paid; both the President and CEO of MIA deny that MIA ever received payment for these deals. (ECF Nos. 31-1 ¶ 13, 31-2 ¶ 13.) Delwood asks the Court to infer from this that MIA actually received payments for these sales but did not pay commissions to Delwood.

---

[4] Though Delwood does not rely on this in its Response Memorandum, its Interrogatory Answers assert that Matteo Goich of Matec Italia made these representations in the presence of MIA employee Laurenze Peschke. (ECF No. 31-5 at 2.) Though Plaintiff has not submitted its portion of the Pretrial Order, its responses also indicate that it intends to call Peschke as a witness to testify to the meetings with Matteo Goich in which commissions were discussed. (*Id.* at 5-6.) It is unclear how this testimony would not call for hearsay at trial, unless it to be used to establish that MIA should have been aware of Matec Italia's sales to Arcelor Mittal and Goich's commitments to pay Delwood commissions. Regardless, this does not change the fact that Goich's statements do not provide evidence of a breach by MIA.

Even viewing the evidence in the light most favorable to Delwood, such an inference would require the Court to improperly speculate. While the non-moving party is entitled to reasonable inferences at the summary judgment stage, "those inferences must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Delwood's request seeks an inference that MIA was paid for a sale largely because a representative from another company promised Delwood commission payments for the sale and MIA's officers admitted to inquiring about such a sale. Such speculation is insufficient evidence that MIA breached the terms of the Agreement.

## IV. CONCLUSION

Because Delwood has not made a sufficient showing on an essential element of its case, summary judgment is proper. Accordingly, MIA's Motion for Summary Judgment (ECF No. 31) is **GRANTED**. Accordingly, this case is **DISMISSED** and retired from the docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 27, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE